

# Marketing & Exclusive Sales Agreement

This engagement agreement (the "**Agreement**") made and entered into on October ___, 2022 (the "**Effective Date**"), by and between Maltz Auctions, Inc. d/b/a Maltz Auctions, hereinafter ("**Maltz**") a New York corporation with its principal office and place of business at 39 Windsor Place, Central Islip, NY 11722; and Laura Marcela Pignataro a/k/a Marcela Pignaturo a/k/a Laura Monia as the debtor and debtor-in-possession (the "**Debtor**"), contains the terms and conditions which will govern the marketing and sale of the Real Estate (defined below) as of the Effective Date.

The Debtor filed a voluntary petition for relief under chapter 11 subchapter 5 of the Bankruptcy Code on May 18, 2022, in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), commencing Case No. 22-22276 (SHL). The Debtor seeks to market and sell certain real property located at 20 Kings Ferry Road, Montrose, New York 10548 (the "**Real Propery**").

The Debtor and Maltz hereby agree that:

1. EXCLUSIVITY. The Debtor wishes to sell the Real Property and, accordingly, grants Maltz the sole and exclusive right to sell the Real Property by public auction (the "**Auction**") as of the Effective Date. The Debtor represents and warrants that any other agreements for the sale of the Real Property shall be cancelled as of the Effective Date and that it is authorized to enter into this Agreement.

2. TERM. The term of this Agreement is 120 days from the Effective Date or the date of the entry of a final and non-appealable order of the Bankruptcy Court authorizing the Debtor to retain Maltz pursuant to the terms and conditions contained herein (the "**Retention Order**"), whichever is later. This Agreement is subject to, and expressly conditioned upon the entry of the Retention Order.

3. SERVICES. Commencing on the Effective Date, Maltz may perform the following services in consultation with the Debtor and its representatives:

    a. create a marketing program for the Real Property that may include, but not be limited to, the following:

    - Direct telephone solicitation;
    - Direct mail solicitation;
    - Distribution of informational brochures;
    - Placement of signs directing phone inquiries to Maltz;
    - Web-based advertising on www.MaltzAuctions.com. This site often receives 100,000+ page views each month;
    - Direct e-mail notifications to the 42,000+ subscribers of the mailing list subscribers to www.MaltzAuctions.com;

- Social media marketing to 30,000+ Facebook fans and Twitter followers;
- Web-based advertising on auction, real estate specific and other targeted websites; and
- Print advertising in publications such a deemed appropriate by Maltz.

    b. provide interested buyers with a due diligence package that the Debtor will compile, where applicable, including, but not limited to:

- Lease(s) and amendment(s);
- Copies of any survey(s);
- Current tax bill(s);
- Floor plans for building(s);
- Financial Report(s);
- Environmental Report(s);
- Property Condition Report(s);

    c. prepare marketing brochures and other similar sales materials that will be transmitted to all interested parties;

    d. (i) consult with the Debtor on the strategy and tactics for fulfilling the Engagement; (ii) identify, contact, screen, and introduce prospective purchasers to the opportunity for a sale with the Debtor; (iii) draft and convey such other information or correspondence with prospective purchasers as may be needed from time to time, including answers to queries regarding information contained in the offering materials; (iv) coordinating a bidding procedure; (v) supervise and/or participate in due diligence investigations carried out by prospective purchasers; (vi) and negotiate on behalf of the Debtor.

    d. utilize marketing and labor budget not to exceed {Waived – 100% Borne by Maltz for all Marketing Related Activities} and may prepare newspaper, magazine, and journal advertisements, signs, informational brochures, mailing lists, and mailings; and

    4.    TERMS OF SALE. Any sale contract shall be subject to the Debtor's receipt of higher and/or better bids which shall be made at the Auction to be conducted in accordance with a sale procedures order entered by the Bankruptcy Court. Any sale of the Real Property shall be free and clear of all liens, claims, and encumbrances, and security interests with such liens, claims, and encumbrances, and security interests to attach to the proceeds of sale.

    5.    FORFEITURE OF DEPOSIT OF SUCCESSFUL BIDDER. In the event a successful bidder as approved by the Bankruptcy Court, forfeits any earnest money or contract deposit as a result of a default or breach of executed terms and conditions of sale in connection with the Auction, said earnest money or contract deposit shall be divided equally between the Debtor and Maltz, except however, that Maltz's portion of the earnest money or the deposit shall not be greater than the compensation it would have been entitled to had the sale closed at the full purchase price.

6. **COMPENSATION-COMMISSION.** The Successful Bidder at the Auction shall pay Maltz a buyer's premium on the high bid of the Real Property sold at Auction, representing Maltz's sole compensation hereunder, which shall be a six (6%) percent buyer's premium, to be paid by the successful bidder, subject to the terms of paragraphs 8 and 10, below (the "**Buyer's Premium**"). In the event the current first mortgagee, New Rez, or the current second mortgagee, United, is the successful bidder, by bidding an amount up to its secured clam, they shall only be required to pay Maltz a reduced Buyer's Premium of two (2%) percent. Any subsequent assignees shall pay the six (6%) percent Buyer's Premium.

7. **MINIMUM ACCEPTABLE PRICE:** Debtor hereby agrees to accept any bid at the public auction for the Real Property.

8. **BANKRUPTCY COURT APPROVAL.** In accordance with the applicable provisions of the Bankruptcy Code, any contract of sale for the Real Property shall be subject to the approval of the Bankruptcy Court, shall be subject to "higher and better offers," which shall take place at the public auction and the closing shall be subject to an order of the Bankruptcy Court approving the highest and best offer and underlying contract of sale.

9. **MARKETING COSTS.** On or before the Effective Date, the Debtor shall advance the actual cost of advertising, promotion, and other expenses incident to the sale of the Real Property not to exceed {waived} (the "**Budget**"), as more fully described in paragraph 3, above.

10. **SOLE AND EXCLUSIVE RIGHT TO SELL.** Debtor grants Maltz the sole and exclusive right to sell the Property. In the event that the Property is withdrawn from the auction for any cause (excluding the mutual withdrawal of Maltz and Seller), or is sold at private sale before the auction by or on the behalf of Seller or Maltz, Seller shall pay to Maltz an amount equal to the greater of, six percent (6%) of the reserve price of the Property withdrawn, or six percent (6%) of the selling price of the Property sold privately. Furthermore, if the Property is sold within the one-hundred-eighty (180) days following the auction to any party who was in contact with Maltz at any inspection, auction, or otherwise, Seller shall pay Maltz an amount equal to six percent (6%) of the selling price of the Property. Should, during the Term, the Debtor enter into an agreement to refinance, borrow against, restructure its existing debt encumbering the Property, and/or recapitalize the Property, in whole or in part, and/or enter into a joint venture agreement relating to the Property, then Debtor will pay Maltz, at closing, a fee in an amount calculated in the same manner as the Commission based upon the aggregate amount of gross refinancing or restructured indebtedness, recapitalization, and/or joint venture investment received or obtained, or to be received or obtained by Debtor, as the case may be, regardless of when the closing of same takes place.

11. **BUYER BROKER PARTICIPATION.** If the successful bidder for this Property is registered by a Buyer's Broker in accordance with the Broker Participation Guidelines, then such Buyer's Broker shall be entitled to two (2%) percent of the high bid at auction (the "**Buyer Broker Commission**").

12. **REPRESENTATIONS, WARRANTIES, & OBLIGATIONS OF MALTZ.** Maltz (a) agrees to promote and conduct said Auction in its usual way as to obtain the highest possible selling price for the Real Property, (b) Maltz shall furnish at the time of the Auction such assistants and other help as may be required to handle the Auction and shall in every way endeavor to sell the Real Property for as high a price as may be obtained, and (c) shall conduct the Auction in accordance with the terms and conditions of sale and/or bidding procedures that are approved by the Bankruptcy Court.

13. **INDEMNIFICATION.** The Debtor confirms that Maltz has the right to rely upon, without further investigation or verification, information transmitted to it by the Debtor. The Debtor

agrees that Maltz does not assume responsibility for the truthfulness, accuracy, or completeness of such information whether or not Maltz makes any independent verification thereof.

In the absence of gross negligence or willful misconduct in the performance of services hereunder, neither Maltz nor any officer, employee, affiliate, director or stockholder of Maltz shall be subject to any liability to the Debtor or to any officer, employee, director or stockholder of the Debtor for any error, inaccuracy or omission, material or otherwise, which may appear in information furnished to or on behalf of the Debtor, or for any act or omission in the course of, or in connection with, the rendering or providing of services or advice hereunder.

The Debtor agrees to indemnify Maltz and its members, affiliates, employees, stockholders, and representatives (the "**Maltz Parties**") and to hold the Maltz Parties harmless against any and all losses, claims, damages or liabilities, joint or several, to which the Maltz Parties become subject in connection with the Engagement or the Seller's subsequent use of information prepared by Maltz. The Debtor will not be liable, however, to the extent that any loss, claim, damage or liability is found in a final judgment by a court to have resulted from Maltz's gross negligence or willful misconduct in performing services hereunder.

14. MISCELLANEOUS. This Agreement shall be binding upon the parties hereto and their respective successors, heirs, and assigns. Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto and their respective successors, heirs, and assigns any rights or remedies under or by reason of this Agreement.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

This Agreement incorporates the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral.

This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties.

Any action or suit of any kind must be commenced within one (1) year from the date when the cause of action or suit accrued or it will be forever barred. The right of action or suit will accrue, and the one (1) year limitation period will begin to run, on the date of the breach, damage, or injury is sustained and not when the resulting cost, damage, harm or loss is discovered.

The parties hereto acknowledge and agree that this Agreement has been negotiated at arm's length and among parties equally sophisticated and knowledgeable in the matters dealt with in this Agreement. Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party that has drafted it is not applicable and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the intent of the parties as set forth in this Agreement.

15. This Agreement shall be governed by the laws of the state of New York, without regard to such state's rules concerning conflicts of laws. Each party irrevocably waives any right to trial by jury in any action, proceeding, or counterclaim (whether based upon contract, tort, or otherwise) related to or arising out of this Agreement.

16. The parties irrevocably consent to the Bankruptcy Court's jurisdiction with respect to any action to approve or enforce this Agreement and expressly waive any right to commence any action in any other forum or to contest the Court's jurisdiction.

17. The Bankruptcy Court shall retain exclusive jurisdiction over the subject matter of this Agreement, including, but not limited to, the implementation and interpretation of the terms and conditions herein.

18. This Agreement may be executed in one or more counterparts, each of which is deemed an original, together constituting one and the same document. Facsimile signatures and signatures in portable document format (.pdf) are deemed originals for the purposes of this Agreement.

19. The persons executing this Agreement on the parties' behalf warrant and represent that they are authorized and empowered to execute and deliver this Agreement on behalf of such party.

AGREED TO AND ACCEPTED BY:

x_____  Date: _____

Sworn to before me this _____ day of October, 2022

_____
Notary Public


**Maltz Auctions, Inc.**
x_____  Date: _10/20/22_
Richard B. Maltz

Title: _Real Estate Broker & CEO, Maltz Auctions, Inc._

Sworn to before me this _20_ day of October, 2022

_____
Notary Public

DEBRA A. DONOVAN
NOTARY PUBLIC OF NEW YORK
NO. 01DO6003880
Qualified in Suffolk County
Commission Expires March 9, 20 26